

6/29/2020                                    Case.net: 2011-CC00457 - Docket Entries

## Your Missouri Courts

Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print          GrantedPublicAccess  Logoff JASONKEMPF

### 2011-CC00457 - MICHAEL WATTLES ET AL V WACHOVIA MORTGAGE ET AL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case**                 Sort Date Entries: ● Descending   Display Options:
Click here to Respond to Selected Documents                    ○ Ascending      [ All Entries ▾ ]

**06/04/2020** ☐ **Agent Served**
Document ID - 20-SMCC-904; Served To - WACHOVIA MORTGAGE CORP.; Server - COLE COUNTY SHERIFF'S DEPARTMENT; Served Date - 29-MAY-20; Served Time - 08:00:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - SERVED SHELLY LEWIS, CSC LAWYERS DESIGNEE.

☐ **Agent Served**
Document ID - 20-SMCC-905; Served To - SELECT PORTFOLIO SERVICING; Server - COLE COUNTY SHERIFF'S DEPARTMENT; Served Date - 29-MAY-20; Served Time - 08:00:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - SERVED SHELLY LEWIS, CSC LAWYERS DESIGNEE.

**05/21/2020** **Summons Issued-Circuit**
Document ID: 20-SMOS-82, for WELLS FARGO BANK, N.A.. OUT OF STATE SUMMONS SAVED AND ATTACHED IN PDF FORM FOR ATTORNEY TO RETRIEVE FROM SECURE CASE.NET. EPP

☐ **Summons Issued-Circuit**
Document ID: 20-SMCC-905, for SELECT PORTFOLIO SERVICING. ALL SUMMONS SAVED AND ATTACHED IN PDF FORM FOR ATTORNEY TO RETRIEVE FROM SECURE CASE.NET. EPP

☐ **Summons Issued-Circuit**
Document ID: 20-SMCC-904, for WACHOVIA MORTGAGE CORP..

☐ **Filing Info Sheet eFiling**
        **Filed By:** BRIAN SCOTT LOVE

☐ **Pet Filed in Circuit Ct**
Petition for Damages and Equitable Relief; Exhibit A.
        **On Behalf Of:** MICHAEL WATTLES, JENNIFER WATTLES

☐ **Judge Assigned**

Case.net Version 5.14.0.17              Return to Top of Page              Released 11/25/2019

## EXHIBIT A

**2011-CC00457**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

IN THE CIRCUIT COURT FOR ST. CHARLES COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MICHAEL WATTLES | ) | |
|    and JENNIFER WATTLES, | ) | |
|    Husband and Wife, | ) | |
| | ) | Cause No. |
|    Plaintiffs, | ) | |
| | ) | |
|    v. | ) | Div. No. |
| | ) | |
| WACHOVIA MORTGAGE CORP., | ) | |
|    Serve: | ) | |
|    **Prentice-Hall Corp. System** | ) | |
|    **221 Bolivar St.** | ) | |
|    **Jefferson City, MO 65101** | ) | |
|    (Summons to issue to Plaintiffs' | ) | |
|    counsel for delivery to Sheriff | ) | |
|    of Cole County, Missouri) | ) | |
| | ) | |
|    And | ) | |
| | ) | |
| WELLS FARGO BANK, N.A. | ) | |
|    Serve: | ) | |
|    **Agent authorized to accept service** | ) | |
|    **420 Montgomery St**. | ) | |
|    **San Francisco, CA 94104** | ) | |
|    (Summons to issue to Plaintiffs' | ) | |
|    counsel for delivery to Sheriff | ) | |
|    of San Francisco County, California) | ) | |
| | ) | |
|    And | ) | |
| | ) | |
| SELECT PROTFOLIO SERVICING, INC. | ) | |
|    Serve: | ) | |
|    **CSC-Lawyers Incorporating** | ) | |
|    **Service Company** | ) | |
|    **221 Bolivar St.** | ) | |
|    **Jefferson City, MO 65101** | ) | |
|    (Summons to issue to Plaintiffs' | ) | |
|    counsel for delivery to Sheriff | ) | |
|    of Cole County, Missouri) | ) | **JURY TRIAL DEMANDED** |
| | ) | |
|    Defendants. | ) | |

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

**PETITON FOR DAMAGES AND EQUITABLE RELIEF**

COME NOW Plaintiffs Michael and Jennifer Wattles ("Plaintiffs"), and for their causes of action against Defendants Wachovia Mortgage Corp. and Wells Fargo Bank, N.A. ("Defendants"), allege and state as follows below.  Said causes of action are plead together, separately, in the alternative, or in the hypothetical.

**Allegations Common to All Counts**

1. Plaintiffs Michael and Jennifer Wattles, husband and wife, are residents of St. Charles County, Missouri.

2. Plaintiffs are the owners of real property located in St. Charles County, Missouri, commonly known and numbered as 4694 Kellykris Drive, St. Charles, MO 63304.

3. Defendant Wachovia Mortgage Corp. ("Wachovia") is a foreign corporation in good standing authorized to conduct business in Missouri, with its headquarters in the state of North Carolina, and which has and does conduct business within Missouri, including in St. Charles County.

4. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association with its headquarters located in San Francisco, California, and which has and does conduct business within Missouri, including in St. Charles County.

5. Defendant Select Portfolio Servicing, Inc. is a foreign corporation in good standing authorized to conduct business in Missouri, with its headquarters in the state of Utah, and which has and does conduct business within Missouri, including in St. Charles County.

**EXHIBIT A**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

6. Jurisdiction in this matter is proper because Defendants entered into a contract within St. Charles County, Missouri and/or committed a tort within St. Charles County, Missouri.

7. Venue for this action in St. Charles County, Missouri is proper pursuant to Mo.Rev.Stat. §508.010.4, in that there is at least one count alleging a tort, and Plaintiffs were first injured in St. Charles County, Missouri.

8. On or about April 14, 2006, Plaintiffs refinanced the mortgage on their property located at 4694 Kellykris Dr., St. Charles, MO 63304.

9. The lender, and the grantee of the Deed of Trust executed in connection with that loan, was Defendant Wachovia Mortgage Corp.  A true and accurate copy of the Deed of Trust is attached as Exhibit A hereto and incorporated by reference as if set forth fully herein.

10. At the time of the refinance, Plaintiffs held greater equity in their property than their indebtedness, allowing them to convert that equity into cash as part of the refinance.

11. As part of the refinance of the mortgage, Defendant Wachovia Mortgage Corp. was supposed to disburse funds from the mortgage to a variety of entities and individuals, including: paying off the previous mortgage; paying cash to the Plaintiffs; and directing payments to various other creditors of Plaintiffs.

12. On information and belief, some, but not all, of the disbursement checks were issued by Defendant Wachovia Mortgage Corp.

13. On information and belief, some, but not all, of the disbursement checks were actually sent to and/or cashed by the intended payees.

**EXHIBIT A**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

14. Plaintiffs were unaware at the time that Defendant Wachovia Mortgage Corp. did not issue and/or deliver some of the disbursement checks to the proper parties, and did not discover these facts until years later.

15. On information and belief, Defendant Wells Fargo Bank, N.A. is the successor in interest to Defendant Wachovia Mortgage Corp. with respect to Plaintiff's mortgage loan by virtue of a merger or consolidation or is a mere continuation, and/or is the holder of the servicing rights to said mortgage loan, and as a legal successor is jointly and severally liable with Defendant Wachovia Mortgage Corp. for all of the acts and omissions described herein.

16. On information and belief, Defendant Select Portfolio Servicing Inc. is the entity currently holding servicing rights to the loan at issue.

## COUNT I: FOR AN ACCOUNTING

For Count I of their Petition against all Defendants, Plaintiffs state and allege as follows:

17. Since April 2006, Defendants have failed to apply and properly account for the distribution of the funds from Plaintiffs' mortgage loan.

18. Plaintiffs cannot determine the amounts disbursed, if any, to any of the persons or entities who were designated to be payees or recipients of funds from the mortgage loan without a complete and accurate accounting for all credits, payments, and sums disbursed by Defendants under the loan documents.

19. Further, determination of the amounts disbursed and balance due on the mortgage involves complicated computations, accounting, and actual or potential application and/or misapplication of funds, including miscalculation of principal and interest, as to the funds disbursed and balance due.

**EXHIBIT A**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

20. By virtue of such actions and its banking relationship with Plaintiffs, Defendants had a fiduciary obligation to Plaintiffs to account for all credits, payments, and disbursements, including principal and interest under the loan documents.

21. Despite demand, Defendants have refused to properly account to Plaintiffs and/or have failed to apply or properly apply disbursements under the mortgage loan.

22. Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray for a complete accounting of all credits, payments, and disbursements by Defendants under the aforesaid loan documents and for a determination by this Court as to the amount actually disbursed and owed, if any, under the mortgage loan; for damages in an amount to be determined such as are fair and reasonable, plus an award of punitive damages should it be determined that any of Defendants' actions were either intentional or grossly negligent, plus costs and attorneys' fees incurred, and for such other relief as the Court deems just and proper.

## COUNT II: CONVERSION

For Count II of their Petition against Defendants Wachovia and Wells Fargo, Plaintiffs state and allege as follows:

1-22.  Plaintiffs restate and reallege Paragraphs 1-22 above as if set forth fully herein.

23. Plaintiffs were entitled to possession of the funds that were the proceeds of the mortgage loan made by Defendants Wachovia and Wells Fargo, and/or to direct the disbursement of those funds to designated parties.

24. Said Defendants exercised unauthorized control over those funds by failing to issue disbursement checks to the parties designated by Plaintiffs, and/or by failing to ensure that said checks reached their intended destinations.

**EXHIBIT A**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

25. By failing to disburse the funds to the parties as directed by Plaintiffs, said Defendants deprived Plaintiffs of their right to possession of the funds and appropriated Plaintiffs' funds to their own use.

26. Plaintiffs were therefore damaged by the conversion of their funds.

27. Said Defendants' actions were intentional, or were done with reckless disregard as to Plaintiffs' rights such that an award of punitive damages is warranted.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants Wachovia Mortgage Corp. and Wells Fargo bank, N.A., jointly and severally, with respect to Count II, in an amount to be determined but believed to be in excess of $25,000.00, for prejudgment interest, for an award of punitive damages, for costs and attorneys' fees as may be allowed by law, and for such other relief as the Court deems just and proper.

## COUNT III: MERCHANDISING PRACTICES ACT

For Count III of their Petition against Defendants Wachovia and Wells Fargo, Plaintiffs state and allege as follows:

1-27. Plaintiffs restate and reallege Paragraphs 1-27 above as if set forth fully herein.

28. Plaintiffs obtained the mortgage loan described above for personal or household purposes, namely to pay off the loan used to purchase their primary residence and to pay off other personal debt.

29. Section 407.020 R.S.Mo. states, in pertinent part: "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce...is declared to be an unlawful practice."

**EXHIBIT A**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

30. Defendants Wachovia and Wells Fargo practiced deception, fraud, false pretense, false promise, misrepresentation, unfair practices, and/or concealment, omission and suppression of material facts including but not limited to: a) representing that it would use some of the proceeds of the mortgage loan it made to Plaintiffs to provide cash payment to Plaintiffs and to issue checks to disburse some of the proceeds to additional creditors of Plaintiffs as directed by them; b) representing that it would use ordinary care to ensure that the necessary checks were issued and delivered to the proper recipients; and c) concealing and suppressing from Plaintiffs that disbursement checks were not issued and/or delivered to all of the intended recipients.

31. Defendants committed said unlawful acts in connection with the sale or advertisement of merchandise in trade or commerce.

32. Defendants' conduct was shocking, extreme and outrageous and was specifically calculated to harm Plaintiffs or, alternatively, was done with reckless indifference to the rights of Plaintiffs, and as such merits an award of punitive damages.

33. Defendants Wachovia and Wells Fargo are also liable for Plaintiffs' reasonable attorneys' fees pursuant to §407.025 R.S.Mo.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants Wachovia Mortgage Corp. and Wells Fargo Bank, N.A., jointly and severally, on Count III, in an amount to be determined but believed to be in excess of $25,000.00, for prejudgment interest, for an award of punitive damages, for Plaintiffs' attorneys' fees and costs, and for such other relief as the Court deems just and proper.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

## COUNT IV: NEGLIGENCE

For Count IV of their Petition against Defendants Wachovia and Wells Fargo, Plaintiffs state and allege as follows:

1-33. Plaintiffs restate and reallege Paragraph 1-33 above as if set forth fully herein.

34. By virtue of making a mortgage loan to Plaintiffs, Defendants Wachovia and Wells Fargo owed a duty of ordinary care to ensure that the funds from the loan were disbursed and delivered to the proper recipients as had been designated by Plaintiffs.

35. Defendants Wachovia and Wells Fargo breached that duty by, *inter alia*: a) failing to issue checks to some of the intended recipients of the loan proceeds; b) failing to deliver all of the checks to their intended recipients; c) failing to maintain proper accounting and administrative practices that would have revealed that not all of the proceeds of the loan were disbursed; d) failing to maintain proper accounting and administrative practices to determine whether all of the issued checks were in fact cashed or had gone stale; e) failing to take reasonable steps to monitor the disbursement of the funds and to apprise Plaintiffs of the status of the disbursements; and/or f) failing to timely notify Plaintiffs that some of the checks were stale and had not been cashed.

36. As a result of said Defendants' negligence, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants Wachovia Mortgage Corp. and Wells Fargo Bank, N.A., jointly and severally, in an amount to be determined but believed to be in excess of $25,000.00, for prejudgment interest, for attorneys' fees and costs as may be allowed by law, and for such other relief as the Court deems just and proper.

**EXHIBIT A**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

## COUNT V: BREACH OF FIDUCIARY DUTY

For Count V of their Petition against Defendants Wachovia and Wells Fargo, Plaintiffs state and allege as follows:

1-36. Plaintiffs restate and reallege Paragraphs 1-36 above as if set forth fully herein.

37. Defendants Wachovia and Wells Fargo were entrusted by Plaintiffs with certain of Plaintiffs' funds (the loan proceeds).

38. Plaintiffs placed special trust and confidence in said Defendants to direct those funds for Plaintiffs' benefit, by delivering them to designated creditors of Plaintiffs.

39. By virtue of this special relationship, and the special trust and confidence placed in said Defendants by Plaintiffs, said Defendants were acting as fiduciary for Plaintiffs.

40. Said Defendants breached that fiduciary duty by, *inter alia*: a) failing to issue checks to some of the intended recipients of the loan proceeds; b) failing to deliver all of the checks to their intended recipients; c) failing to maintain proper accounting and administrative practices that would have revealed that not all of the proceeds of the loan were disbursed; d) failing to maintain proper accounting and administrative practices to determine whether all of the issued checks were in fact cashed or had gone stale; e) failing to take reasonable steps to monitor the disbursement of the funds and to apprise Plaintiffs of the status of the disbursements and/or f) failing to timely notify Plaintiffs that some of the checks were stale and had not been cashed.

41. As a direct result of said Defendants' actions and/or inactions described above, Plaintiffs were damaged.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants Wachovia Mortgage Corp. and Wells Fargo Bank, N.A., jointly and severally, in an amount to be

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

determined but believed to be in excess of $25,000.00, for prejudgment interest, for attorneys' fees and costs as may be allowed by law, and for such other relief as the Court deems just and proper.

## COUNT VI: REFORMATION OF INSTRUMENTS (FRAUD)

For Count VI of their Petition against all Defendants, Plaintiffs state and allege as follows:

1-41. Plaintiffs restate and reallege Paragraphs 1-41 above as if set forth fully herein.

42. As part of the making of the mortgage loan referenced herein, Defendants represented to Plaintiffs that some of the proceeds of the loan would be used to pay off designated creditors of Plaintiffs and to provide cash payment directly to Plaintiffs.

43. This representation was material to Plaintiffs' decision to enter into the mortgage loan, which consisted of a promissory note and a Deed of Trust (Exhibit A).

44. Defendants intended that Plaintiffs act upon the representations in Paragraph 42 by executing the promissory note and Deed of Trust.

45. Defendants knew that these representations were false, or were ignorant of whether they were true or false.

46. Plaintiffs did not know that Defendants' representations were false.

47. Plaintiffs relied on Defendants' representations in choosing to execute the promissory note and Deed of Trust.

48. Plaintiffs had a right to rely on Defendants' representations.

49. Plaintiffs were injured, in that they are obligated to repay a greater indebtedness than they actually incurred due to the failure to disburse part of the funds, and their title ownership interest in their property is burdened or impaired to a greater extent than the amount of indebtedness which was actually incurred.

**EXHIBIT A**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

WHEREFORE, Plaintiffs pray for an Order and Judgment reforming the terms of the promissory

note and the Deed of Trust (Exhibit A) to accurately reflect the true indebtedness incurred by

Plaintiffs, for an award of Plaintiffs' costs and attorneys' fees against Defendants as may be

allowed by law, and for such other relief as the Court deems just and proper.

FEDERER & FEDERER, P.C.

 /s/     Brian Love
Thomas A. Federer - #37139
Brian Love - #57735
201 S. Fifth Street
St. Charles, MO 63301
Phone: (636) 949-2424
Fax:    (636) 949-9610

# EXHIBIT A

**2011-CC00457**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

15
5-13
L-15

2006073100064618 D T
Bk:DE4542 Pg:1818
07/31/2006 02:50:54PM  1/15

**CERTIFIED-FILED FOR RECORD**
Barbara J. Hall
Recorder of Deeds
St. Charles County,MO
BY: Mary Brown

---

[SPACE ABOVE THIS LINE FOR RECORDING]

TITLE(S) OF DOCUMENT:          DEED OF TRUST

DATE OF DOCUMENT: APRIL 14, 2006

GRANTOR(S): MicHAEL R. WATTLES AND JENNIFER A. WATTLES

GRANTOR'S ADDRESS: 4694 KELLyKRiS DRiVE
ST. CHARLES MO. 63304

GRANTEE(S): WACHOViA MoRTgAgE CoRP.

GRANTEE'S ADDRESS: 1100 CORPORATE CEnTER DRiVE
RALEigH, NC 27607-5066

FULL LEGAL DESCRIPTION IS LOCATED ON PAGE:     **SEE EXHIBIT "A"**

REFERENCE BOOK(S) AND PAGE(S), IF REQUIRED:



Eno- First American

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

2006073100C646180 2/15
Bk:DE4542 Pg:1819

When recorded mail to:
*FIRST AMERICAN TITLE INSURANCE*
*1228 EUCLID AVENUE, SUITE 400*
*CLEVELAND, OHIO  44115*
*ATTN: FT1120*

Prepared By: C Arole Davis
1525 West W.T. Harris Blvd.
Charlotte, NC 28288

_____ [Space Above This Line For Recording Data] _____

# DEED OF TRUST

Lender address on page 1.
Trustee name/address on page 2.
Legal description on page 3.

9140340

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated

**April 14, 2006,**

together with all Riders to this document.

**(B) "Borrower"/Grantor** is

  **MICHAEL R WATTLES ,**
  **and JENNIFER A WATTLES , HUSBAND  AND WIFE**


whose address is

  **4694 KELLYKRIS DR, SAINT CHARLES, MO  63304.**

Borrower is the trustor under this Security Instrument.

**(C) "Lender"/Grantee** is

  **Wachovia Mortgage Corporation.**

Lender is a **Corporation**
organized and existing under the laws of

  **North Carolina.**

Lender's address is

  **1100 Corporate Center Drive, Raleigh, NC 27607-5066.**

Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is

  **FIRST AMERICAN TITLE INSURANCE COMPANY.**

*See Exhibit A*

MISSOURI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT              Form 3026 1/01
231775 MOdeed_conf.doc (Rev 01, 11/05)              Page 1 of 13              963  8882190776/0303989107

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

```
2006073100064518 3/15
Bk:DE4542 Pg:1820
```

Trustee's address is

**7777 BONHOMME, SUITE 1603, CLAYTON, MO 63105**

**(E) "Note"** means the promissory note signed by Borrower and dated **April 14, 2006** . The Note states that Borrower owes Lender **Two Hundred Thousand and 00/100** Dollars (U.S. **$200,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **04/19/2036** .

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the

| | | |
|---|---|---|
| MISSOURI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT | | Form 3026 1/01 |
| 231775 MOdeed_conf.doc (Rev 01, 11/05) | Page 2 of 13 | 963  8882190776/0303989107 |

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

```
2006073100064619R  4/15
Bk:DE4542 Pg:1821
```

County of                        **SAINT CHARLES**
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
**SEE ATTACHED SCHEDULE A.**

Parcel ID Number: **A870000023** which currently has the address of **4694 KELLYKRIS DR** [Street] **SAINT CHARLES** [City], Missouri **63304** [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

2006073100064610D 5/15
Bk:DE4542 Pg:1822

more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the

MISSOURI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              Form 3026 1/01
231775  MOdeed_conf.doc (Rev 01, 11/05)                    Page 4 of 13                963  8882190776/0303989107

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

2006073100064618O 6/15
Bk:DE4542 Pg:1823

Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and

**EXHIBIT A**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

2006073100054618O 7/16
Bk: DE4542 Pg: 1824

shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

# EXHIBIT A



Bk:DE4542 Pg:1825

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

2006073100064618 9/15
Bk:DE4542 Pg:1826

had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees

**EXHIBIT A**

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

2006073100064618O 10/15
Bk: DE4542 Pg: 1827

that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent,

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

```
2006073100066461B0  11/15
```
Bk:DE4542 Pg:1828

Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

```
2006073100646180  12/15
Bk:DE4542 Pg:1829
```

removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.**

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM



2006073100646180 13/15
Bk:DE4542 Pg:1830

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**26. Homestead Exemption.** Borrower hereby waives all homestead exemptions in the Property to which Borrowers would otherwise be entitled under Applicable Law.

**27. Notice.** Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

2006073100064618 14/15
Bk:DE4542 Pg:1831

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

| _____ | [SEAL] -Witness | _____ | [SEAL] -Witness |

_Michael R Wattles_
**MICHAEL R WATTLES**                    [SEAL] -Borrower          _____    [SEAL] -Borrower

_Jennifer A Wattles_
**JENNIFER A WATTLES**                    [SEAL] -Borrower          _____    [SEAL] -Borrower

_____    [SEAL] -Borrower          _____    [SEAL] -Borrower

_____    [SEAL] -Borrower          _____    [SEAL] -Borrower

**STATE OF MISSOURI,**

County SS: ST CHARLES

On this 14th day of April 2006                    , before me personally appeared

Michael R WATTLES
Jennifer A WATTLES

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the and State aforesaid, the day and year first above written.

My Term Expires:
June 3, 2008

_Melba A Versemann_
Notary Public
Melba A Versemann

**MELBA A. VERSEMANN**
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires June 3, 2008

MISSOURI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3026 1/01
231775  MOdeed_conf.doc (Rev 01, 11/05)          Page 13 of 13          963  8882190776/0303989107

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - May 21, 2020 - 02:34 PM

2006073100 0646180 15/15
Bk:DE4542 Pg:1832

## EXHIBIT "A"

### LEGAL DESCRIPTION

A PARCEL OF LAND SITUATED IN THE STATE OF MISSOURI, COUNTY OF ST
CHARLES, WITH A STREET LOCATION ADDRESS OF 4694 KELLYKRIS DR; ST
CHARLES, MO 63304-3411 CURRENTLY OWNED BY MICHAEL R WATTLES AND
JENNIFER A WATTLES HAVING A TAX IDENTIFICATION NUMBER OF
A870000023 AND FURTHER DESCRIBED AS MEADOWRIDGE #3 LOT 80 .

A870000023
4694 KELLYKRIS DR; ST CHARLES, MO 63304-3411

8882190776
28051142/f

WATTLES
9149340

FIRST AMERICAN LENDERS ADVANTAGE
DEED OF TRUST

## EXHIBIT A



## IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>DANIEL G PELIKAN | **Case Number:  2011-CC00457** |
| Plaintiff/Petitioner:<br>MICHAEL WATTLES | Plaintiff's/Petitioner's Attorney/Address<br>BRIAN SCOTT LOVE<br>FEDERER & FEDERER PC<br>201 S 5TH ST<br>ST CHARLES, MO  63301 |
| vs. | |
| Defendant/Respondent:<br> WACHOVIA MORTGAGE CORP. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Other Tort | |
| | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  WACHOVIA MORTGAGE CORP.
                                    Alias:

**PRENTICE-HALL CORP. SYSTEM**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO  65101**
*COURT SEAL OF*

*ST. CHARLES COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

|  |  |
|---|---|
| _____5/21/2020_____<br>Date | _____/S/  Cheryl Crowder_____<br>Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____            _____
Printed Name of Sheriff or Server                                    Signature of Sheriff or Server
                    **Must be sworn before a notary public if not served by an authorized officer:**
                    Subscribed and sworn to before me on _____ (date).

*(Seal)*

                    My commission expires: _____            _____
                                                                    Date                                    Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# EXHIBIT A



**IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI**

| Judge or Division:<br>DANIEL G PELIKAN | Case Number:  2011-CC00457 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL WATTLES | Plaintiff's/Petitioner's Attorney/Address<br>BRIAN SCOTT LOVE<br>FEDERER & FEDERER PC<br>201 S 5TH ST<br>ST CHARLES, MO  63301 |
| vs. | |
| Defendant/Respondent:<br> WACHOVIA MORTGAGE CORP. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Other Tort | |
| | (Date File Stamp) |

## Summons in Civil Case

| The State of Missouri to:   SELECT PORTFOLIO SERVICING<br>Alias:<br>**CSC-LAWYERS INCORPORATING SERVICE<br>COMPANY<br>221 BOLIVAR STREET<br>JEFFERSON CITY, MO  65101**<br>*COURT SEAL OF*<br><br><br><br>*ST. CHARLES COUNTY* | **You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.** |
|---|---|

_____5/21/2020_____          _____/S/  Cheryl Crowder_____
                    Date                                                                Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
            Printed Name of Sheriff or Server                                     Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____     _____
                                          Date                                                 Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

 A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# EXHIBIT A

## <u>NOTICE TO ATTORNEYS AND LITIGANTS</u>

## <u>COURT PROCEDURES FOR IN-PERSON HEARINGS</u>

1. **YOU MUST BRING AND WEAR A MASK WHILE IN THE COURTHOUSE.**

2. You MUST be here and check in at the beginning of the hour you are assigned.

3. Only the Litigants and their Attorney are permitted in the Courthouse. No other family members are permitted in the Courthouse.

4. Only 2 persons may use an elevator at a time. The stairwells will be open for separate entry and exit with instructions.

5. A limited number of people are permitted in the courtroom at a time. If you are in the hallway waiting for your turn in court you MUST practice social distancing of 6 feet of separation.  Follow the instructions of the bailiff at all times.

6. You are only permitted to be on the same floor of the Courthouse as the Courtroom to which you are assigned.

7. You MUST have all paperwork filed with the Court prior to the start of your court time.

8. You MUST have all plea agreements worked out with the Prosecuting Attorney's office and all paperwork filed with the Court prior to your Court date. No plea bargaining in Court will be permitted.

9. **If you have ANY cold or flu-like symptoms, fever, dry cough or difficulty breathing, DO NOT come to the Courthouse. You should contact your Attorney and the Courts prior to your assigned court time, preferably 24 hours before your court date.  You will be given a new Court date.**

**EXHIBIT A**

STATE OF MISSOURI                    )
                                     )  ss.
ST. CHARLES COUNTY, MISSOURI         )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

Pursuant to Missouri Supreme Court Rule 17, the Circuit Court of St. Charles County, Missouri (Eleventh Judicial Circuit) has adopted a local rule to encourage voluntary alternative dispute resolution.  The purpose of the rule and the program it establishes is to foster timely, economical, fair and voluntary settlements of lawsuits without delaying or interfering with a party's right to resolve a lawsuit by trial.

This program applies to all civil actions other than cases in the small claims, probate and family court divisions of the Circuit Court, and you are hereby notified that it is available to you in this case.

The program encourages the voluntary early resolution of disputes through mediation. Mediation is an informal non-binding alternative dispute resolution process in which a trained mediator facilitates discussions and negotiations among the parties to help them resolve their dispute.  The mediator is impartial and has no authority to render a decision or impose a resolution on the parties.   During the course of the mediation, the mediator may meet with the parties together and separately to discuss the dispute, to explore the parties' interests, and to stimulate ideas for resolution of the dispute.

A list of mediators approved by the court and information regarding their qualifications is kept by the Circuit Clerk's Office.  If all parties to the suit agree to mediation, within ten days after they have filed the Consent to Mediation Form on the reverse side of this page with the Clerk of the Court, they shall jointly select from that list a mediator who is willing and available to serve.  If the parties cannot agree upon the mediator to be selected, the Court will make the selection.

The full text of the Circuit Court's local court rules, including Rule 38 Alternative Dispute Resolution, is available from the Clerk of the Circuit Court or at: http://www.courts.mo.gov/hosted/circuit11/Documents/LOCAL_COURT_RULES.pdf

A copy of this Notice is to be provided by the Clerk of the Circuit Court to each of the parties initiating the suit at the time it is filed, and a copy is to be served on each other party in the suit with the summons and petition served on that party.

**EXHIBIT A**

STATE OF MISSOURI                  )
                                                   ) ss.
ST. CHARLES COUNTY, MISSOURI      )

### IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

_____ )
                   Plaintiff(s),   )
                                )
vs.                                  )           Cause #_____
                                  )
_____ )
                   Defendant(s).  )

### CONSENT TO MEDIATION FORM

       I, the undersigned counsel of record in this case, hereby certify that I have discussed the subject of mediation under the Court's Alternative Dispute Resolution Program with my client(s) in this case and that:

_____ We believe that mediation would be helpful in this case and consent to the referral of the case to mediation upon the filing of similar consents by all other parties in the case.

_____ We do not consent to the referral of this case to mediation.

                                          _____
                                          Signature

                                          _____
                                          (Print Name)

                                          Attorney for:

                                          _____
                                          (Party or Parties)

Date: _____

# EXHIBIT A



## IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division:<br>DANIEL G PELIKAN | Case Number:  2011-CC00457 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL WATTLES<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>BRIAN SCOTT LOVE<br>FEDERER & FEDERER PC<br>201 S 5TH ST<br>ST CHARLES, MO  63301 |
| Defendant/Respondent:<br>WACHOVIA MORTGAGE CORP. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

### Summons for Personal Service Outside the State of Missouri
#### (Except Attachment Action)

**The State of Missouri to:**   **WELLS FARGO BANK, N.A.**
**Alias:**

**420 MONTGOMERY STREET**
**SAN FRANCISCO, CA  94104**

***COURT SEAL OF***

***ST. CHARLES COUNTY***

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

_____5/21/2020_____                _____/S/ Cheryl Crowder_____
Date                                                                              Clerk
Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
   _____ (name) _____ (title).
   ☐ other: _____.

Served at _____ (address)

in _____County, _____ (state), on _____ (date) at _____ (time).

_____                _____
Printed Name of Sheriff or Server                                        Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).

I am: (check one) ☐  the clerk of the court of which affiant is an officer.
                              ☐  the judge of the court of which affiant is an officer.
                              ☐  authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                              ☐  authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| **Service Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____miles @ $ _____ per mile) |
| **Total** | $_____ |

**See the following page for directions to officer making return on service of summons.**

# EXHIBIT A

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

# EXHIBIT A

## <u>NOTICE TO ATTORNEYS AND LITIGANTS</u>

## <u>COURT PROCEDURES FOR IN-PERSON HEARINGS</u>

1.  **YOU MUST BRING AND WEAR A MASK WHILE IN THE COURTHOUSE.**

2.  You MUST be here and check in at the beginning of the hour you are assigned.

3.  Only the Litigants and their Attorney are permitted in the Courthouse. No other family members are permitted in the Courthouse.

4.  Only 2 persons may use an elevator at a time. The stairwells will be open for separate entry and exit with instructions.

5.  A limited number of people are permitted in the courtroom at a time. If you are in the hallway waiting for your turn in court you MUST practice social distancing of 6 feet of separation.  Follow the instructions of the bailiff at all times.

6.  You are only permitted to be on the same floor of the Courthouse as the Courtroom to which you are assigned.

7.  You MUST have all paperwork filed with the Court prior to the start of your court time.

8.  You MUST have all plea agreements worked out with the Prosecuting Attorney's office and all paperwork filed with the Court prior to your Court date. No plea bargaining in Court will be permitted.

9.  **If you have ANY cold or flu-like symptoms, fever, dry cough or difficulty breathing, DO NOT come to the Courthouse. You should contact your Attorney and the Courts prior to your assigned court time, preferably 24 hours before your court date.  You will be given a new Court date.**

**EXHIBIT A**

STATE OF MISSOURI                              )
                                               )  ss.
ST. CHARLES COUNTY, MISSOURI        )

### IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI


**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**


Pursuant to Missouri Supreme Court Rule 17, the Circuit Court of St. Charles County, Missouri (Eleventh Judicial Circuit) has adopted a local rule to encourage voluntary alternative dispute resolution.  The purpose of the rule and the program it establishes is to foster timely, economical, fair and voluntary settlements of lawsuits without delaying or interfering with a party's right to resolve a lawsuit by trial.

This program applies to all civil actions other than cases in the small claims, probate and family court divisions of the Circuit Court, and you are hereby notified that it is available to you in this case.

The program encourages the voluntary early resolution of disputes through mediation.  Mediation is an informal non-binding alternative dispute resolution process in which a trained mediator facilitates discussions and negotiations among the parties to help them resolve their dispute.  The mediator is impartial and has no authority to render a decision or impose a resolution on the parties.   During the course of the mediation, the mediator may meet with the parties together and separately to discuss the dispute, to explore the parties' interests, and to stimulate ideas for resolution of the dispute.

A list of mediators approved by the court and information regarding their qualifications is kept by the Circuit Clerk's Office.  If all parties to the suit agree to mediation, within ten days after they have filed the Consent to Mediation Form on the reverse side of this page with the Clerk of the Court, they shall jointly select from that list a mediator who is willing and available to serve.  If the parties cannot agree upon the mediator to be selected, the Court will make the selection.

The full text of the Circuit Court's local court rules, including Rule 38 Alternative Dispute Resolution, is available from the Clerk of the Circuit Court or at: http://www.courts.mo.gov/hosted/circuit11/Documents/LOCAL_COURT_RULES.pdf

A copy of this Notice is to be provided by the Clerk of the Circuit Court to each of the parties initiating the suit at the time it is filed, and a copy is to be served on each other party in the suit with the summons and petition served on that party.


# EXHIBIT A

STATE OF MISSOURI                                 )
                                                  )  ss.
ST. CHARLES COUNTY, MISSOURI                      )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

_____ )
                         Plaintiff(s),  )
                                                  )
vs.                                               )            Cause #_____
                                                  )
_____ )
                        Defendant(s).  )

**CONSENT TO MEDIATION FORM**


      I, the undersigned counsel of record in this case, hereby certify that I have discussed the subject of mediation under the Court's Alternative Dispute Resolution Program with my client(s) in this case and that:

_____ We believe that mediation would be helpful in this case and consent to the referral of the case to mediation upon the filing of similar consents by all other parties in the case.

_____ We do not consent to the referral of this case to mediation.


          _____
          Signature

          _____
          (Print Name)

          Attorney for:

          _____
          (Party or Parties)

Date: _____


# EXHIBIT A



 **IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI**

| Judge or Division:<br>DANIEL G PELIKAN | Case Number:  2011-CC00457 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL WATTLES | Plaintiff's/Petitioner's Attorney/Address<br>BRIAN SCOTT LOVE<br>FEDERER & FEDERER PC<br>201 S 5TH ST<br>ST CHARLES, MO  63301 |
| vs. | |
| Defendant/Respondent:<br>WACHOVIA MORTGAGE CORP. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Other Tort | |

*RECEIVED*

MAY 2 8 2020

*COLE COUNTY*
*SHERIFF'S OFFICE*

(Date File Stamp)

## Summons in Civil Case

**The State of Missouri to:  SELECT PORTFOLIO SERVICING**
**Alias:**
CSC-LAWYERS INCORPORATING SERVICE
COMPANY
221 BOLIVAR STREET
JEFFERSON CITY, MO  65101

*COURT SEAL OF*

*ST. CHARLES COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

_____5/21/2020_____          _____/S/  Cheryl Crowder_____
Date                                                   Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
Shelly Lewis (CSC Lawyers) (name) _____Designee_____ (title).

☐ other:

Served at 221 Bolivar St Jefferson City MO 65101 (address)

in Cole (County/City of St. Louis), MO, on 05.29.2020. (date) at 8:00 Am (time).

Sheriff  _____          By  Cpl. Tiffany Thurman_____
Printed Name of Sheriff or Server                          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

(Seal)

My commission expires: _____          _____
Date                                                   Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

*FILED*

JUN 04 2020

CIRCUIT CLERK
ST. CHARLES COUNTY

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* **Document Id # 20-SMCC-905**          1 of 1          Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

# EXHIBIT A



 **IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI**

| Judge or Division:<br>DANIEL G PELIKAN | Case Number:  2011-CC00457 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL WATTLES | Plaintiff's/Petitioner's Attorney/Address<br>BRIAN SCOTT LOVE<br>FEDERER & FEDERER PC<br>201 S 5TH ST<br>ST CHARLES, MO  63301 |
| vs. | |
| Defendant/Respondent:<br>WACHOVIA MORTGAGE CORP. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Other Tort | |

**RECEIVED**

MAY 2 8 2020

COLE COUNTY
SHERIFF'S OFFICE

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to:  WACHOVIA MORTGAGE CORP.
                    Alias:

PRENTICE-HALL CORP. SYSTEM
221 BOLIVAR STREET
JEFFERSON CITY, MO 65101
*COURT SEAL OF*

*ST. CHARLES COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

_____5/21/2020_____          _____/S/ Cheryl Crowder_____
Date                                                      Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)
- [ ] delivering a copy of the summons and a copy of the petition to the defendant/respondent.
- [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
- [X] (for service on a corporation) delivering a copy of the summons and a copy of the complaint to Shelly Lewis (CSC Lawyers) (name) Designee (title).
- [ ] other:

Served at 221 Bolivar St Jefferson City Mo 65101 (address)
in Cole (County/City of St. Louis), MO, on 05·29·2020 (date) at 8:00 AM (time).

Sheriff _____          By Cpl. Tiffany Thurman
Printed Name of Sheriff or Server          Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
                              Date                              Notary Public

**FILED**

### Sheriff's Fees, if applicable
| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $     10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

JUN 0 4 2020

CIRCUIT CLERK
ST. CHARLES COUNTY

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# EXHIBIT A